**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**CARLOS CRUZ, ANDRES HERNANDEZ, GENARO PEREZ IBARRA, RACHEL HIGGINS, Esq., as Personal Representative of Narciso Bandala-Flandes, Deceased, PAULA GAMINO-LAZARO, GUADALUPE BANDALA-GAMINO, MONICA BANDALA-GAMINO, and MIGUEL ANGEL BANDALA-GAMINO,**

**Plaintiffs,**

**and**

**ZIA TRUST, INC., a New Mexico corporation as Personal Representative of the Estate of Mitchell Rosario Ortega, and as Conservator of Irvin Naveda Rosario, and LEONARDO ROSARIO QUITARIO,**

**Plaintiffs-in-Intervention,**

**v.** **No. CIV 06-538 BB/DJS**

**BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE, LLC,**

**Defendant.**

**MEMORANDUM OPINION**
**AND**
**ORDER LIMITING THE TESTIMONY OF DAVID OSBORNE**

**THIS MATTER is before the Court on the Motion of Defendant Bridgestone/Firestone to Exclude the Testimony of David Osborne [Doc. 78]. The**

**Court finds Mr. Osborne's testimony that this tire is defective because it lacked a nylon cap should be excluded under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The remainder of his report appears to meet the standards of *Daubert*.**

***<u>Background Facts</u>***

**On February 25, 2006, on Interstate 10 in New Mexico, a 1988 GMC Suburban overturned due to a tread separation on the left rear tire of the vehicle. This is a products liability action arising out of this accident. The subject tire was a 31x10.5R15LT Firestone all terrain radial, Load Range C, with a model name of Wheel Trac. The designation of LT indicates that the tire is a Light Truck tire. It is undisputed that the subject tire was approximately five years and seven months old on the date of the incident and had at least 2/32 remaining tread life; it had been improperly patched, and it had a nail in it.**

**Plaintiffs allege the Firestone Wheel Trac Radial AT was mounted on a 1988 GMC Suburban or("subject vehicle") and that due to a tread/belt separation, the vehicle rolled over. There were twelve occupants of the vehicle when it rolled. Several of the Plaintiffs allege injuries and Plaintiff-in-Intervention's decedent was killed. Plaintiffs bring negligence, strict liability, and breach of warranty causes of action against Firestone. Firestone denies Plaintiffs' allegations against it and contends the subject tire is not defective and sustained the tread/belt separation as a result of sustaining a road hazard impact injury. Plaintiffs have designated David Osborne as**

**an "expert witness" to be called at the trial of this matter for the purpose of offering his opinions regarding alleged defects in the subject tire.**

**Defendant Firestone has moved to exclude Mr. Osborne's testimony on the grounds it does not meet the requirements of *Daubert* which suggest expert testimony be evaluated by at least the following factors: (1) whether the theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory or technique has been generally accepted in the particular scientific field. The Court finds that Mr. Osborne's conclusions on the nylon ply cap do not meet this standard.[1]**

***Credentials***

**Mr. Osborne worked nearly 36 years, from 1964 to 1999, for a British tire company, Cooper-Avon Tyre Company Ltd. ("Cooper-Avon"). He joined the company in February 1964 at age seventeen as a technical trainee. For the first three years during his apprenticeship, he took educational courses specifically focusing on the technical and scientific aspects of the design and manufacture of tires. In 1967, Cooper-Avon accepted Mr. Osborne into its technical department as a Technical Assistant. After that, he was promoted first to Technical Superintendent in 1971, Assistant Development Manager in 1981, and finally Consultant Tire Technologist for the**

---

[1] Mr. Osborne is qualified to give, and can legally support, his opinions on: (1) the necessity for tire replacement after six years; (2) the multiple reasons why a tire can fail; (3) the impact damage was not the cause of the tread separation; and (4) the propriety of using this tire at 75 miles per hour. Unfortunately, while sufficient to meet the *Daubert* tests, Mr. Osborne first advanced these theories after his RULE 26 disclosures and his deposition, and the Court has ruled this is too late given the impending trial.

**overseas division. In the latter position, Mr. Osborne was Cooper-Avon's international "tire expert" until he retired in 1999.**

**Mr. Osborne's experience with failed tire analysis goes back to around 1970 when he was trained to inspect post-test tires and customer-complaint tires for Cooper-Avon. Later, he was leader of a small team responsible for various aspects of both light truck and passenger tire design. Mr. Osborne also trained others at Cooper-Avon in all aspects of the development of tires, including failed-tire analysis. He has given talks and seminars on tire performance, tire failures, as well as marketing. Throughout his time at Cooper-Avon, Mr. Osborne analyzed the failure of at least 8,000 tires, including over a thousand light truck tires. However, from 1985 until 1999, Mr. Osborne does not recall inspecting any steel-belted radial passenger or light truck tire at Cooper-Avon that sustained a tread/belt separation. Since leaving Cooper-Avon, he has consulted with and testified exclusively for plaintiffs' counsel on tire claims.**

***Testing***

**Mr. Osborne has not performed any testing specifically related to his opinions in this case. Nor is he aware of any testing on nylon caps vis-a-vis tire separation. He pointed to a study by Defendant which was not produced under a claim of privilege. The Court has reviewed the study and finds it relates to the comparability of the durability of tires with nylon strips (not caps) on a different type tire manufactured at a different plant; *i.e.*, not the Decatur Plant. This limited analysis appears designed to**

**evaluate quality of the Dueler tires at the other plant and thus does not support Mr. Osborne's theory that nylon caps are necessary because of the way pelletizing was performed at the Decatur facility.[2] The only other study, which he also could not testify about because of a confidentiality order, related to customer satisfaction because of the increased durability based on nylon strips.**

***Peer Review***

**While Mr. Osborne has provided studies to support several of his opinions regarding appropriate tire life and use, he has none for his nylon cap theory. He basically opines it is his experience that nylon caps make tires safer but offers no empirical data to support his opinion. He cannot identify any published literature or published scientific data that would indicate what design factors he would utilize to determine when to use a nylon cap ply. Mr. Osborne has never published his opinion that the absence of a nylon cap ply in a steel-belted radial tire constitutes a defect except in trial testimony. Nor has he ever offered his nylon cap ply opinion at any profesional conference. Mr. Osborne cannot recall any specific instance where, in any public forum outside of a litigation matter, he has offered the opinion that the absence of a nylon cap ply is a defect in a tire.**

---

[2] This pelletizing theory has superficial allure. Because it was disclosed well after discovery closed, the Court offered Plaintiffs the opportunity to provide evidence it was tied to Mr. Osborne's RULE 26 report. No such evidence was provided.

**Mr. Osborne is not aware of any scientific study that stands for the proposition that the absence of a nylon cap ply is a design defect in the tire. Nor is he aware of any treatises suggesting that the absence of a nylon cap ply is a defect in the tire. There is no text or treatise contained on Mr. Osborne's list of references which indicates that the absence of a nylon cap ply is a defect in the tire.**

**Mr. Osborne cannot quantify or place a value on the forces or stresses that would be transferred to a nylon cap ply in the failure mechanism of the subject tire. He has never done, and is unaware of, any impact testing of tires with or without nylon cap plies. Nor has he ever done any testing of tires with nylon cap plies where the tires were subjected to an impact to see what effect, if any, a nylon cap ply would have.**

***General Acceptance***

**Mr. Osborne agrees there is not any standard in the United States that requires or suggests the use of nylon caps in tires. He agrees that nylon cap plies were first developed in Europe for high-speed tires. The primary purpose of nylon caps when they were used in Europe was to control centrifugal growth and prevent standing waves in tires at high speeds; *i.e.*, over 100 miles per hour.**

**Mr. Osborne is not aware of any tire manufacturer in the world which makes all of their steel-belted radial tires with nylon cap plies. He also admits when he worked at Cooper-Avon, the company did not use nylon cap plies in all of its steel-belted radial tires. Moreover, he designed steel-belted radial tires for passenger cars and light trucks**

**without nylon cap plies while he worked for Cooper-Avon, but he did not, and does not, believe such tires were defective in design.**

**In essence, Mr. Osborne's theory, although he no longer says it explicitly, is that the fact of tread separation on a tire with any viable tread indicates a defect.[3] At his deposition, he acknowledged that each and every time he has testified in a case involving a tread belt separation, he has testified the tire was defective. Nor has he ever seen a tire separation where he concluded the tire was not defective. Again, without any testing or data, Mr. Osborne agrees he has testified only for plaintiffs, never a manufacturer.**

**No doubt several of these factors have caused several courts to reject Mr. Osborne's nylon cap theory under *Daubert*. Most recently, United States District Judge Kathleen Cardone found that Mr. Osborne had adequate credentials and research to testify on several aspects of tire design and manufacture. She did, however, exclude his nylon cap testimony:**

> **Notwithstanding his admission as a tire expert, Osborne may not offer expert testimony regarding his theory on "nylon cap ply." In stark contrast to his other statements, Osborne supplies no evidentiary basis to support his contention that all tires lacking a "nylon cap ply" harbor a design defect. Rather, this testimony echoes the caution of prior holdings concerning "leaping from an accepted scientific premise to an unsupported one." During his deposition, Osborne stated that "if a tire has a tread separation, and it doesn't have a nylon cap ply, then yes, I believe it's defective in design." By his own admission, Osborne made the**

---

3 The mere occurrence of an accident is, of course, not evidence of a defect. *Gates v. Ford Motor Co.*, 494 F.2d 458, 459 (10th Cir. 1974); *Grenier v. Medical Eng'g Corp.*, 243 F.3d 200 (5th Cir. 2001).

> **same contention in thirty two (32) different cases where he was called to testify as an expert. Fundamentally, such unsubstantiated leaps in logic offend the core of the *Daubert* holding and have no rightful place in the courtroom. As a consequence, this Court joins other courts who have rejected this "nylon cap ply" theory and refuses to allow Osborne to offer testimony on nylon cap ply and design defects related thereto. *See Smith v. Goodyear Tire & Rubber Co.*, No. 06-60373, 2007 WL 2200700 (5th Cir. Aug. 2, 2007); *McCool v. Bridgestone Firestone N. Am. Tire, LLC*, 222 Fed. Appx. 847 (11th Cir. 2007); *Williams v. Michelin N. Am., Inc.*, 381 F. Supp. 2d 1351 (M.D. Fla. 2005).**

***Vigil v. Michelin N. Am., Inc.*, No. EP-05-CV-001-KC (W.D. Tex. filed Aug. 24, 2007) (slip op. at 11-12) (internal citations omitted). This Court agrees with the decisions cited above.**

## O R D E R

**For the above stated reasons, Mr. Osborne will be precluded from testifying on his nylon cap ply theory but will be allowed to testify on the other conclusions in his report to the extent they remain at issue.**

**SO ORDERED this 2d day of September, 2008.**

Bruce D. Black
**BRUCE D. BLACK**
**United States District Judge**